IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

BILLY WESTBROOK,
Institutional ID No. 146994,

Plaintiff,

v.

SHERIFF KELLY ROWE, *et al.*,

Defendants.

§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 5:22-CV-309-BQ

**FINDINGS, CONCLUSIONS, AND**
**RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Billy Westbrook filed this action under

42 U.S.C. § 1983, claiming violations of his constitutional rights during his incarceration at the

Lubbock County Detention Center (LCDC). Compl. 3–4, 8–9, ECF No. 1; *see* Questionnaire 1,

ECF No. 15.[1] The United States District Judge transferred this case to the undersigned United

States Magistrate Judge for further proceedings. ECF No. 9. The undersigned thereafter reviewed

Westbrook's Complaint, as well as authenticated records from LCDC, and ordered Westbrook to

complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF

Nos. 1, 11, 12. Westbrook timely completed and returned the questionnaire. ECF No. 15.

Not all parties have consented to proceed before the undersigned magistrate judge. In

accordance with the order of transfer, the undersigned makes the following findings, conclusions,

and recommendations to the district judge.

---

[1] Page citations to Westbrook's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

## I.    Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing

2

complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.    Discussion

### A.  Westbrook's Allegations and Authenticated Records

Westbrook asserts claims against the following Defendants:  (1) Sheriff Kelly Rowe, (2) Sergeant Taylor, and (3) Sergeant Sasin. Compl. 1, 3.  Westbrook alleges that on September 21, 2022, while sleeping, his cellmate began making noise that awakened Westbrook, and he "became disrespectful [and] offended when [Westbrook] said 'please be quiet.'" Questionnaire 1–2.  Westbrook alleges that he then got up, and his cellmate "started hitting [him] with multiple rings . . . that are considered contraband [and] used as weapons." *Id.* at 2.  Westbrook contends that Sergeants Taylor and Sasin "witnessed" his cellmate cause him bodily harm because "[t]hey are responsible for the shift" but did nothing to help him. *Id.*; Compl. 3.  Westbrook avers that because of this incident, his face and mouth were "disfigured and broken needing serious medical aid," and that he would not have suffered such harm had the rules been enforced at LCDC. Compl. 4.

According to Westbrook, Defendants had personal knowledge of his cellmate's rings before the September 21 altercation because "they are supposed to pat [and] search every individual that comes into booking [and] find any possible contraband . . . [n]amely rings not approved by facility rules." Questionnaire 3.  Westbrook further claims that Sheriff Kelly Rowe is responsible for this incident because he is a supervisor and allowed his cellmate to "bring weapons (rings) into the facility which were used in causing [Westbrook] bodily harm." Compl. 4; Questionnaire 3.  Sheriff Rowe is allegedly the "main overseer" of the facility and failed to

implement "proper moral conduct training"—e.g., "search[ing] all inmates properly so nothing dangerous enters." Questionnaire 4.

Records show, and Westbrook agrees, that during the altercation, his cellmate used the intercom system to tell an LCDC officer to "[c]all back up." *Id.* at 5. An officer then called Detention Response Team members and two officers entered Westbrook's cell. *Id.* An officer drew his taser and ordered Westbrook and his cellmate to the ground, to which they both complied. *Id.* Further, according to records and body-worn camera footage, which Westbrook does not dispute, LCDC officers escorted Westbrook to the medical department after the altercation. *Id.* Westbrook was evaluated by an EMT and transported to the hospital for further examination. *Id.* In the emergency room, Westbrook received treatment for his injuries—a lacerated lip, thumb fracture, nasal fracture, and partial tooth avulsion. *Id.* The hospital discharged Westbrook with an antibiotic prescription and instructed him to follow-up with LCDC medical staff for his orthopedic, ear, nose, and throat (ENT), and dental issues. *Id.* at 5–6. Westbrook requests monetary damages for his mental anguish and medical bills and asks that the "involved parties [be] fired for allowing this to happen." Compl. 4.

Based on the foregoing factual allegations, the Court construes Westbrook's assertions as alleging the following claims: (1) failure to protect against all Defendants; and (2) failure to train and/or supervise against Sheriff Rowe. *Id.* at 3–4; Questionnaire 4.

### B. Failure to Protect

As a pretrial detainee, Westbrook's failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment.[2] Similar to an inmate's Eighth Amendment claim for failure

---

[2] The Supreme Court has held that courts must apply an objective test to excessive force claims brought by pretrial detainees. *See Kingsley v. Hendrickson*, 576 U.S. 389, 392 (2015). The Ninth Circuit subsequently extended *Kingsley*'s objective standard to a pretrial detainee's claim for failure to protect. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). The Fifth Circuit, however, has thus far declined to follow the Ninth Circuit's

to protect, a prison official has a duty to protect a pretrial detainee from violence at the hands of other inmates while confined. *See Hare*, 74 F.3d at 639; *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future; however, not every injury caused by another prisoner gives rise to constitutional liability. *Horton v. Cockrell*, 70 F.3d 397, 400–01 (5th Cir. 1995).

In a case alleging an "episodic act or omission" by a jail official, such as Westbrook alleges here, a detainee must show that the official acted with "deliberate indifference" to a substantial risk of serious harm to the detainee. *Hare*, 74 F.3d at 636 (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). Specifically, to state a constitutional claim for failure to protect, a plaintiff must show: (1) he was subjected to conditions "posing a substantial risk of serious harm"; and (2) prison officials were deliberately indifferent to his need for protection. *Id.* at 648 (quoting *Farmer*, 511 U.S. at 834); *see Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). A finding of deliberate indifference requires more than mere negligence—the jail official must: (1) be subjectively aware that the detainee faces a substantial risk of serious harm; and (2) disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837; *see also Hare*, 74 F.3d at 648 ("Though *Farmer* dealt specifically with a prison official's duty under the Eighth Amendment to provide a convicted inmate with humane conditions of confinement, we conclude that its subjective definition of deliberate indifference provides the appropriate standard for measuring the duty owed to pretrial detainees under the Due Process Clause."). Thus, the jail official "must both

---

lead. The Fifth Circuit affirmed its holding of *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996), which applies a "subjective deliberate indifference" standard to all failure to protect claims, regardless of whether the plaintiff is a pretrial detainee or a prisoner, and noted that the Ninth Circuit is the only circuit to have extended *Kingsley* to a pretrial detainee's failure to protect claims. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419–20 & n.4 (5th Cir. 2017); *see also Robertson v. Gautreaux*, No. 16-341-JJB-RLB, 2017 WL 690542, at *3–5 (M.D. La. Feb. 21, 2017) (discussing the *Kingsley*, *Castro*, and *Hare* cases and applying *Hare* standard to a detainee's failure to protect claim). Accordingly, this Court will apply a subjective deliberate indifference standard to Westbrook's claim and rely on case law discussing application of the Fourteenth and Eighth Amendments to a plaintiff's failure to protect claim.

be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

A detainee seeking to establish a constitutional violation need not show that jail officials believed harm would actually occur—"it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842; *see Hare*, 74 F.3d at 648. The law does not expect or require, however, that jail officials "prevent all inmate-on-inmate violence" (*Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003)), and mere negligence in failing to protect a detainee from assault does not comprise a constitutional violation. *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990); *see also Ard v. Rushing*, 597 F. App'x 213, 219 (5th Cir. 2014) (per curiam) ("A state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 326 n.8 (5th Cir. 2002))). "To sustain his constitutional claim, [the detainee] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" *Hamilton v. Dretke*, No. 7:06-CV-043-O, 2009 WL 320777, at *2 (N.D. Tex. Feb. 10, 2009) (second alteration in original) (quoting *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993)).

According to Westbrook, Sergeants Taylor and Sasin failed to protect him from his cellmate when they "witnessed" his cellmate cause him bodily harm, i.e., they did nothing to help him even though "[t]hey are responsible for the shift."[3] Questionnaire 2; Compl. 3. Westbrook further claims that Sheriff Rowe is responsible for this incident because he is a supervisor and allowed his cellmate to "bring weapons (rings) into the facility which were used in causing [Westbrook] harm." Compl. 4; Questionnaire 4–5. Westbrook alleges that Sergeants Taylor and

---

[3] *See infra* note 4 concerning Westbrook's assertion that Defendants Taylor and Sasin "witnessed" the incident.

Sasin had personal knowledge of his cellmate's rings before the September 21 altercation because "they are supposed to pat [and] search every individual that comes into booking [and] find any possible contraband . . . [n]amely rings not approved by facility rules." Questionnaire 3. In addition, Sheriff Rowe is the "main overseer" of the facility who ensures that officers are "search[ing] all inmates properly so nothing dangerous enters." *Id.* at 4.

Westbrook's failure to protect claim fails because he does not allege facts showing that Defendants were aware of his cellmate's rings and that his cellmate would attack him, or that such known risks were disregarded. Westbrook concedes that he did not report that his cellmate wore contraband rings or that he feared his cellmate would use them to harm him. *See id.* at 3. Instead, he simply alleges that Sergeants Taylor and Sasin *should* have known about the rings because they are supposed to search every individual who is booked into jail and are responsible for the shift.[4] *Id.* Such allegations are insufficient to show that Sergeants Taylor and Sasin possessed the requisite knowledge that a substantial risk of serious harm existed and that they ignored such risk. *See, e.g., Hill v. Thomas*, 326 F. App'x 736, 737 (5th Cir. 2009) (per curiam) (affirming the dismissal of inmate's failure to protect claim when inmate failed to show defendants had knowledge of a substantial risk of serious harm to inmate prior to the incident at issue); *Kelly v. Caudillo*, No. 5:21-CV-175-BQ, 2022 WL 19228850, at *7 (N.D. Tex. Aug. 30, 2022)

---

[4] Although Westbrook does not name these individuals as defendants, Westbrook alleges that when informed of the attack by his cellmate, officers immediately called for help, stopped Westbrook's cellmate from attacking him, and escorted Westbrook to medical. While Westbrook asserts that Sergeants Taylor and Sasin "witnessed" the attack, he only alleges this because "[t]hey are responsible for the shift"—he provides no facts demonstrating they were actually present and observed the incident. Questionnaire 2. In addition, Westbrook agrees that Sergeant Sasin, as "zone supervisor," was not notified of the altercation until *after* officers had already stopped it. *Id.* at 5. Such assertions further demonstrate that Sergeant Sasin did not have the knowledge required to disregard a substantial risk of serious harm, and that other officers took appropriate action to alleviate that risk when they became aware of it. *See Rodriguez v. Lozano*, 108 F. App'x 823, 830 (5th Cir. 2004) (per curiam) (reversing denial of summary judgment because the officers' only involvement in inmates' attack on plaintiff was after the incident, which cannot form the basis of a failure to protect claim); *Randolph v. Prator*, No. 03-0433, 2005 WL 1630167, at *2 (W.D. La. June 16, 2005) (recommending dismissal of plaintiff's failure to protect claim because defendant responded immediately and appropriately once the altercation began and had no knowledge of the difficulties between plaintiff and his cellmate before the incident).

(recommending dismissal of plaintiff's claim because he "failed to plead facts showing he informed any [d]efendant of a substantial risk that his cellmate would sexually assault him"), *R. & R. adopted by* 2023 WL 2604955 (N.D. Tex. Mar. 22, 2023), *aff'd*, 2023 WL 5767578 (5th Cir. 2023).

His claims against Sheriff Rowe similarly fail. Westbrook's only assertion to support Sheriff Rowe's alleged personal involvement in this incident is that he is a supervisor and allowed Westbrook's cellmate to "bring weapons (rings) into the facility which were used in causing [Westbrook] harm." Questionnaire 3–4. Westbrook admits, however, that he never had any interaction with Sheriff Rowe, and he alleges no facts supporting a finding that Sheriff Rowe knew Westbrook's cellmate wore contraband rings and that a substantial risk of harm existed. *Id.* at 4. Thus, Westbrook fails to establish Sheriff Rowe's deliberate indifference to a known risk of harm. *See Stovall v. Gusman*, No. 10-1098, 2010 WL 4363181, at *4 (E.D. La. Sept. 10, 2010) (finding plaintiff's claim against sheriff failed because sheriff was not personally involved nor "aware of the risk of harm [plaintiff] experienced at the hands of the inmate who allegedly assaulted him"), *R. & R. adopted in part by* 2010 WL 4362793 (E.D. La. Oct. 25, 2010) (agreeing that plaintiff did not state a failure to protect claim against sheriff but allowing plaintiff an opportunity to amend); *Hill v. Bowles*, No. 396CV-3036P, 1999 WL 7838, at *3 (N.D. Tex. Jan. 4, 1999) (granting sheriff summary judgment on plaintiff's failure to protect claim where evidence did not show sheriff was notified of any risk to plaintiff by being placed in cell with inmate who attacked him or otherwise personally participated in the alleged events).

At best, Westbrook's allegations establish that Defendants were negligent in failing to discover his cellmate's rings during the booking process. Such allegation that Defendants should have known that his cellmate had contraband rings that he would later use to attack Westbrook

falls far short of establishing that Defendants were both aware of the facts from which the inference could be drawn and actually drew the inference that there was a substantial risk of serious harm. *Edmiston v. Borrego*, 75 F.4th 551, 559 (5th Cir. 2023) ("[A]n official will not be held liable if he merely should have known of a risk." (internal quotation marks omitted) (quoting *Converse v. City of Kemah*, 961 F.3d 771, 775 (5th Cir. 2020))); *Smith v. Jaramillo*, No. SA-05-CA-0713 NN, 2006 WL 1984345, at *4 (W.D. Tex. July 13, 2006) (dismissing prisoner's failure to protect claim based on "generic complaints and speculations that defendants . . . *personally knew or should have known* that he would be assaulted by a" gang member). Thus, because Westbrook fails to allege facts showing that Defendants were aware of any risk of harm posed by his cellmate or that such risk was disregarded, the undersigned recommends his failure to protect claim be dismissed.

## C. Failure to Train and/or Supervise

According to Westbrook, Sheriff Rowe is responsible for the attack on Westbrook because he failed to implement "proper moral conduct training"—e.g., "search[ing] all inmates properly so nothing dangerous enters"—and he is a supervisor and allowed Westbrook's cellmate to "bring weapons (rings) into the facility which were used in causing [Westbrook] harm." Compl. 4; Questionnaire 3–4. Further, Westbrook avers that his face and mouth were "disfigured and broken needing serious medical aid" and that he would not have suffered such harm had the LCDC rules been enforced. Compl. 4.

It is well established that supervisory officials are not liable for the acts of their subordinates unless: (1) they affirmatively participated in an act that caused a constitutional deprivation; or (2) they implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A prisoner must sufficiently allege facts showing either

personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as prison supervisors "are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303. A plaintiff can prove "a government's policy or custom" through means other than reference to formal policy, such as showing the existence of an unconstitutional practice that is so "persistent and widespread" as to constitute a de facto policy or custom. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690–91, 694 (1978). Plaintiffs face a high burden when claiming a level of pervasiveness sufficient to attribute an informal policy to a government entity or supervisory official. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984) ("Isolated violations are not the persistent, often repeated, constant violations that constitute custom and policy."). Further, even if a plaintiff can prove implementation of a policy, supervisory liability only exists if "the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (internal quotation marks omitted) (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169–170 (5th Cir. 1985)).

"Even within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cnty.*, 637 F. App'x 127, 134 (5th Cir. 2016) (per curiam) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). A defendant's "failure to train" employees only gives rise to liability where the failure "evidences a deliberate indifference" to the plaintiff's constitutional rights such that it can "be properly thought of as a . . . policy or custom that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted).

First, the Court notes that Westbrook has not stated a viable failure to protect claim against any Defendant. He therefore cannot state a claim for supervisory liability. *See Mouille*, 977 F.2d

10

at 929; *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of [appellant's] inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation."); *Gibbs v. King*, 779 F.2d 1040, 1046 n.6 (5th Cir. 1986) ("There is no supervisory liability without primary liability."); *Taylor v. Hale*, No. 3:07-CV-1634-L, 2008 WL 4449502, at *8 (N.D. Tex. Sept. 30, 2008) ("[E]ven if [p]laintiff were to adequately set forth an unconstitutional policy or custom, his claim fails as a matter of law because the court has found that there is no underlying constitutional violation."). For this reason alone, Westbrook's claim against Sheriff Rowe should be dismissed.

Moreover, Westbrook does not explain the basis for his claim that the lack of "proper moral conduct training" caused improper searching of inmates during the booking process. *See* Compl. 4; Questionnaire 3–4. Westbrook also does not identify any policy or custom or affirmative acts by Sheriff Rowe that resulted in such a policy or custom, or explain *how* training provided by Rowe was deficient. *See* Questionnaire 3–4. Rather, Westbrook has simply named Sheriff Rowe because he is a person with a title that he thinks might have some policymaking or training role and claims that he should be responsible. Thus, Westbrook does not plead facts sufficient to survive screening concerning a policy or custom within LCDC or for Rowe's failure to train officers. *See Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."); *Backe v. City of Galveston*, 2 F. Supp. 3d 988, 1007 (S.D. Tex. 2014) ("Vague assertions regarding the need for 'better or more training' [are] insufficient for a constitutional failure to train claim." (quoting *City of Canton*, 489 U.S. at 391)); *Gallaher v. City of Maypearl*, No. 3:17-CV-1400-M, 2018 WL 700252, at *6 (N.D. Tex. Feb. 2, 2018) (dismissing plaintiff's failure to train claim in part because plaintiff did "not point

to a specific training program or identify what training or supervision should have occurred to prevent the allegedly unconstitutional actions of" defendants); *Posey v. Sw. Bell Tel. L.P.*, 430 F. Supp. 2d 616, 627–28 (N.D. Tex. Mar. 24, 2006) ("The [c]ounty cannot be liable when it has a policy in place that addresses the concerns raised by [p]laintiffs, but the employees fail to follow the policy, unless the [c]ounty acted with deliberate indifference; otherwise § 1983 liability becomes nothing more than respondeat superior liability.").

The undersigned therefore recommends dismissal of Westbrook's claims against Sheriff Rowe.

### III.    Recommendation

For these reasons, the undersigned recommends that the United States District Judge **DISMISS with prejudice** Westbrook's Complaint and all claims alleged therein for failure to state a claim in accordance with 28 U.S.C. § 1915.

### IV.    Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district

court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      Dated: December 11, 2023.

                                  **D. GORDON BRYANT, JR.**
                                  **UNITED STATES MAGISTRATE JUDGE**